JOURNAL ENTRY and OPINION
{¶ 1} Appellant Cory McDougler appeals his kidnapping conviction. McDougler assigns the following three errors for our review:
"I. The trial court erred when it denied appellant's motion for acquittal under Crim.R. 29 because the State failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support a conviction for kidnapping."
"II. The conviction was against the manifest weight of the evidence."
"III. The trial court erred by denying appellant's motion for reconsideration."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the decision of the trial court. The apposite facts follow.
 {¶ 3} McDougler waived his right to a jury trial; therefore, the matter proceeded before the bench.
 {¶ 4} On July 1, 2004 at approximately 4:00 p.m., the seventeen-year old victim attended with his friends a girls' softball game at Kurtz Park in Parma Heights. While walking across the park, the victim and his friends observed a fight on one of the basketball courts. The victim observed one of the people involved retrieve a handgun from a Corvette and brandish the gun at the crowd. When the police arrived, the victim told officers about the man with the gun.
 {¶ 5} Later, he encountered three males. One of those males, who the victim described as shorter than the others, appeared to be the leader. The victim stated the man was a light-skinned African-American, wearing red basketball shorts and a white t-shirt. The victim later identified McDougler as the man.
 {¶ 6} The men pushed the victim into the restroom. McDougler told the victim that they were going to "kick his ass" for getting their friend "Bill locked up." They ordered him to put his hands up on the wall and to not turn around. When the victim attempted to turn around, McDougler told him not to turn around again or he would harm the victim. The men then went through his pockets, emptied the contents onto the floor, and took five dollars from his wallet.
 {¶ 7} After the men were done rifling through his pockets, the victim was told not to turn around or they would harm him. They then ran out of the restroom.
 {¶ 8} The victim went directly to a friend's father, who was an off-duty RTA officer attending the softball game. The father summoned the police. When the police arrived, the victim identified McDougler as one of the perpetrators to the officers. At the time, McDougler was playing basketball on one of the park courts.
 {¶ 9} When the officers approached McDougler and called to him, McDougler swore at the officers and fled. McDougler gave up after a brief chase and was arrested.
 {¶ 10} The trial court found McDougler not guilty of robbery, intimidation, and retaliation. However, the court found him guilty of kidnapping. The trial court sentenced McDougler to one year of community control.
 SUFFICIENCY OF THE EVIDENCE {¶ 11} In his first assigned error, McDougler argues his conviction for kidnapping is not supported by sufficient evidence because there was no evidence he terrorized the victim. We disagree.
 {¶ 12} The standard of review with regard to the sufficiency of evidence is set forth in State v. Bridgeman:[1]
"Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."[2]
 {¶ 13} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks,[3] in which the Ohio Supreme Court held:
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"
 {¶ 14} R.C. 2905.01(A)(3) defines kidnapping in pertinent part as follows:
"(A) No person, by force, threat, or deception, * * * by any means, shall remove another from the place where the person is found or restrain the liberty of the other person, for any of the following purposes.
"* * *
"(3) To terrorize, or to inflict serious physical harm on the victim or another."
 {¶ 15} The record indicates that McDougler ordered the victim into the bathroom and said he was going to "beat his ass." McDougler also threatened to "mess him up" after the victim turned to look at the men after being instructed not to. Finally, when the suspects were done ransacking the victim's pockets, McDougler ordered the victim not to turn around or they would harm him. McDougler contends these threats were not enough to constitute the element of "terrorize."
 {¶ 16} The word "terrorize" is not defined by the Revised Code. However, this district and the Tenth District have determined that the term "terrorize" is not a legal term, but rather a common word.[4] The dictionary defines "terrorize" as "to fill with terror or anxiety."[5]
 {¶ 17} The victim testified that after the individuals left, he was so scared and shaken that he did not pick up his belongings that were on the floor. He also waited several seconds before running out of the restroom out of fear of the men. He then went directly to his friend's father without looking around for the assailants. Therefore, it appears McDougler's threats that he "would mess him up" and would "fuck him up" induced anxiety and fear in the seventeen-year old victim.
 {¶ 18} Also, we agree with the trial court that although the term "`fucked up' could mean a lot things, `fucked up' can also mean dead or some sort of serious physical harm."[6]
Therefore, we conclude the State presented sufficient evidence that McDougler "terrorized" the victim. Accordingly, McDougler's first assigned error is overruled.
 MANIFEST WEIGHT OF THE EVIDENCE {¶ 19} In his second assigned error, McDougler argues his conviction was against the manifest weight of the evidence. We disagree.
 {¶ 20} When the argument is made that the conviction is against the manifest weight of the evidence, the appellate court is obliged to consider the weight of the evidence, not its mere legal sufficiency. The defendant has a heavy burden in overcoming the fact finder's verdict. As the Ohio Supreme Court held inState v. Thompkins:[7]
"Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' Blacks, supra, at 1594.
"* * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." {¶ 21} McDougler contends the victim's testimony was not credible because it would be incredulous for him to proceed to play basketball outside the restroom where he had just accosted the victim. He also contends the victim's statement that McDougler threatened to beat him up for getting his friend "Bill locked up" was not credible, because the man arrested for having the weapon at the earlier fight was named Michael, and McDougler was not even at the earlier fight.
 {¶ 22} We conclude that the victim's credibility was for the trial court to discern. The trier of fact is in the best position to observe the witness's demeanor, voice inflection, and mannerisms in determining each witness's credibility.[8]
Accordingly, on issues of credibility, we defer to the trial court, which was the trier of fact in the instant case.
 {¶ 23} Moreover, the trial court found McDougler not guilty of retaliation; therefore, the fact the victim testified regarding the wrong person being arrested is not of consequence. Further, a reading of the record indicates that the victim looks very similar to his brother and that the "Bill," McDougler alluded to, could have been completely unrelated to the earlier altercation at the park.
 {¶ 24} McDougler also argues the victim's identification was compromised because the restroom in which the kidnapping occurred did not contain a light. However, the victim testified that it was a sunny day and that natural light lit the bathroom. Moreover, the victim testified that he was initially accosted outside the restroom entrance. It was then that he was shoved by a man he later identified as McDougler. The victim was able to identify McDougler as one of the perpetrators to the officers shortly after the incident. Therefore, we conclude the trier of fact did not lose its way in accepting the victim's identification.
 {¶ 25} McDougler also contends the evidence of his conviction was undermined by the fact that none of the girls whom the victim escorted to the restrooms testified. It is pure speculation as to what the girls would have testified to. In fact, it is doubtful they would have had valuable testimony given they were in the women's restroom, while the offense occurred in the men's restroom.
 {¶ 26} Finally, McDougler contends the fact the trial court found him not guilty of robbery, intimidation, or retaliation, undermines his conviction for kidnapping on the same evidence. We concluded in the first assigned error that sufficient evidence was presented to support McDougler's kidnapping conviction. Therefore, this argument has no merit. Accordingly, McDougler's second assigned error is overruled.
 MOTION FOR RECONSIDERATION {¶ 27} In his third assigned error, McDougler argues the trial court erred by denying his motion for reconsideration. Given our disposition of the first and second assigned errors, McDougler's third assigned error is moot and need not be addressed.[9]
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
James J. Sweeney, P.J., and Michael J. Corrigan, J., concur.
[1] (1978), 55 Ohio St.2d 261, syllabus.
[2] See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19,23; State v. Davis (1988), 49 Ohio App.3d 109, 113.
[3] (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[4] State v. Canter, 10th Dist. No. 01AP-531, 2002-Ohio-1347; State v. Carter (Nov. 14, 1991), Cuyahoga App. No. 59223.
[5] State v. Leasure, 6th Dist. No. L-02-1207, 2003-Ohio-3987, quoting Merriam Webster's Collegiate Dictionary (10th Ed. 1996) at 1217.
[6] Tr. at 205.
[7] 78 Ohio St.3d 380, 386-387, 1997-Ohio-52.
[8] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
[9] App.R. 12(A)(1)(c).