OPINION
{¶ 1} Defendant-appellant, Adam Douglas Chasteen, appeals his convictions in the Butler County Common Pleas Court for kidnapping and victim intimidation. For the reasons discussed below, we affirm.
 {¶ 2} On July 11, 2007, appellant was indicted on one count each of the following: (1) kidnapping in violation of R.C. 2905.01(A)(3), a felony of the first degree; (2) intimidation of a victim in violation of R.C. 2921.04(B), a felony of the third degree; (3) drug possession in violation of R.C. 2925.11, a third-degree misdemeanor; and (4) assault in violation of *Page 2 
R.C. 2903.13(A), a first-degree misdemeanor. The charges stemmed from events that occurred between appellant and his ex-girlfriend, Lindsey Leonard ("Leonard"), in the early morning hours of May 28, 2007.
 {¶ 3} According to the record, at approximately 12:30 a.m., Leonard and her cousin, Amber Lakes, were watching a movie at Lakes' house in Hamilton. Leonard testified that she had been living with Lakes since her relationship with appellant ended in January of 2007. According to witness testimony at trial, Leonard and appellant had a turbulent relationship, and their subsequent break up was on less than amicable terms.
 {¶ 4} Leonard testified that while watching the movie, she and Lakes observed the headlights of a car pulling up to the front of the house. Leonard opened the front door and saw appellant standing outside. When appellant attempted to come inside, Leonard asked him to stay on the front porch because Lakes did not want him in her house. Leonard joined appellant on the front porch. She testified that she did not know appellant was coming over and did not invite him to the house.
 {¶ 5} According to Leonard, appellant appeared to be intoxicated and was upset. He accused her of "making a fool out of him" by taking another male companion into his father's bar. Leonard testified that before she had a chance to respond, appellant hit her, and her head "bounced off" the front porch railing. She contends that appellant then grabbed her by the hair and started hitting her.
 {¶ 6} Lakes testified that she came outside after hearing raised voices and a "thump." She attempted to intervene and told appellant to stop hitting Leonard. According to Lakes, appellant hit her in the face with an open hand, knocking her to the ground. He then pulled out a knife and threatened to kill both women if she did not leave. Lakes ran off the porch and called 911.
 {¶ 7} After Lakes left, appellant held the knife to Leonard's neck, and told her to stop *Page 3 
screaming or he was going to "knock [her] teeth down [her] throat." Appellant told Leonard that he thought the police would be arriving shortly, and that she needed to decide whether she wanted to "live or die." Appellant told her if she wanted to live, she had to go with him in his car. Leonard asked appellant to promise her that if she went with him, she would get to see her family again. According to Leonard, appellant replied, "I'm not promising you shit. I'm telling you that if you leave right now then you live. If you don't[,] then you die." Leonard testified to being "scared to death" when she got into appellant's car.
 {¶ 8} Leonard contended that during the approximate ten minute car ride to his house, appellant was driving at a very high rate of speed, and had the knife in his lap. Leonard stated that she thought he was going to kill them both, and that appellant was screaming at her and accused her of burglarizing his house.
 {¶ 9} Once they arrived at his house, appellant was walking around holding the knife, and continued his accusations that Leonard had committed the alleged burglary. Two Hamilton police officers arrived shortly thereafter and arrested appellant. One officer testified that he observed Leonard sitting on a couch in the living room. He stated that Leonard appeared to be terrified and was "awe struck" and crying.
 {¶ 10} After appellant was released from jail on bond, Leonard went to Maine to stay with friends. She testified that on June 4, 2007, appellant called her from his friend's telephone. Appellant told her they needed to talk about the criminal charges against him, and that she "better make it right." Appellant also told her that if she wanted "everything to be fine," she would tell the authorities that he did not kidnap her. Leonard told appellant that she was not going to lie for him, and that she was no longer in Ohio. According to Leonard, appellant responded that it did not matter if "he couldn't get to me, he would get to my cousin." Leonard testified that appellant tended to follow through with his threats, and she told him she would say whatever he wanted her to say because she did not want him to harm *Page 4 
her or a member of her family.
 {¶ 11} Following a bench trial on October 15, 2007, appellant was convicted of kidnapping, intimidation, and assault.[1] Appellant was sentenced to five years in prison on the kidnapping count, three years on the intimidation count, and 180 days on the assault count. The trial court ordered the intimidation and assault sentences to be served concurrently with the sentence for kidnapping.
 {¶ 12} Appellant has appealed his convictions for kidnapping and victim intimidation, and advances two assignments of error for our review.
 {¶ 13} Assignment of Error No. 1:
 {¶ 14} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT CONVICTED HIM OF KIDNAPPING, INSTEAD OF ABDUCTION."
 {¶ 15} In his first assignment of error, appellant challenges the sufficiency of the evidence presented to the trial court to support his kidnapping conviction, and argues that only a conviction for abduction was supported by the evidence. This argument lacks merit.
 {¶ 16} In reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. State v. Wilson, Warren App. No. CA2006-01-007,2007-Ohio-2298, ¶ 33. In such a review, "`[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" State v.Haney, Clermont App. No. CA2005-07-068, 2006-Ohio-3899, ¶ 14, quotingState v. Tenace, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37. Further, a reviewing court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the *Page 5 
evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781. A reviewing court must not substitute its evaluation of the witness' credibility for that of the jury. See State v. Benge, 75 Ohio St.3d 136,143, 1996-Ohio-227.
 {¶ 17} The trial court convicted appellant of kidnapping under R.C. 2905.01(A)(3), which provides:
 {¶ 18} "(A) No person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 {¶ 19} "* * *
 {¶ 20} "(3) To terrorize, or to inflict serious physical harm on the victim or another."
 {¶ 21} Appellant argues that the evidence was insufficient to establish that he purposely terrorized Leonard. As set forth above, kidnapping requires the culpable mental state of "purpose." See R.C. 2905.01(A); State v. Parker, Cuyahoga App. No. 90256, 2008-Ohio-3681, ¶ 38. A person acts purposely when "it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). The Ohio Supreme Court has determined that, if difficult to prove with direct evidence, a defendant's mental state may be "inferred from the surrounding circumstances." State v. Logan (1979), 60 Ohio St.2d 126, 131. The element "terrorize," although not defined by the Ohio Revised Code, has been defined "according to its common usage, i.e., `to fill with terror or anxiety.'" State v. Eggleston, Lake App. No. 2008-L-047,2008-Ohio-6880, fn.1, quoting State v. Leasure, Lucas App. No. L-02-1207, 2003-Ohio-3987, ¶ 47. See, also, State v. McDougler, Cuyahoga App. No. 86152, 2006-Ohio-100, ¶ 16. *Page 6 
 {¶ 22} The trial court heard Leonard's testimony that she was scared to death prior to getting into appellant's car. The police officer testified that Leonard appeared to be terrified, and was awe struck and crying at appellant's house. The court also heard the testimony of a witness who was down the street from Lakes' house at the time of the altercation. The witness testified to hearing "blood curdling screams." He further testified to hearing a male scream "[s]hut up, bitch. I'll cut you to pieces." A female then responded, "[n]o, no, no. Don't hurt me. I'll go with you." We find this evidence was sufficient to demonstrate that appellant forcibly removed Leonard from Lakes' house with the purpose to fill her with terror or anxiety, and therefore, the trial court did not err in concluding that the state proved the elements of kidnapping beyond a reasonable doubt.
 {¶ 23} In light of our determination that appellant's conviction was supported by sufficient evidence, we need not address the merits of appellant's claim that only a conviction for abduction, an alleged lesser included offense of kidnapping, was warranted. A charge on a lesser included offense is required "only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." State v. Thomas
(1988), 40 Ohio St.3d 213, paragraph two of the syllabus. In a bench trial such as the one in this case, whether or not the trial court considered a lesser included offense is irrelevant once the court determines that all essential elements of the greater offense have been proven. See State v. Lloyd, Warren App. Nos. CA2007-04-052, CA2007-04-053, 2008-Ohio-3383, ¶ 34, citing State v. Johnson, Mahoning App. No. 00 CA 131, 2001-Ohio-3506 at ¶ 48.
 {¶ 24} Based on the foregoing analysis, appellant's first assignment of error is overruled.
 {¶ 25} Assignment of Error No. 2:
 {¶ 26} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT *Page 7 
WHEN IT CONVICTED HIM OF INTIMIDATION OF A WITNESS."
 {¶ 27} In his second assignment of error, appellant challenges the sufficiency of the evidence presented by the state to support his conviction for intimidating Leonard.
 {¶ 28} Intimidation of a crime victim or witness is defined by R.C. 2921.04(B), which provides, "[n]o person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges or an attorney or witness involved in a criminal action or proceeding in the discharge of the duties of the attorney or witness." A violation of division (B) of the statute is a felony of the third degree. R.C. 2921.04(D).
 {¶ 29} Although appellant admits to telling Leonard that she needed to "make things right," he argues that a felony conviction was unsupported because he did not tell Leonard what might happen if she refused his request. According to appellant, there "simply was no proof" that he used force or an unlawful threat of harm, in part, because Leonard was several hundred miles away in Maine. Appellant argues that at most, he was guilty of violating division (A) of the statute, which provides that a person shall not knowingly "attempt to intimidate or hinder" a crime victim or witness. See R.C. 2921.04(A). A violation of division (A) constitutes a first-degree misdemeanor. R.C. 2921.04(D).
 {¶ 30} Contrary to appellant's argument, the offense of intimidation "does not require that the actions of the speaker cause the victim to believe the speaker would cause imminent physical harm. Rather, it is the unlawful threat of harm, and not actual harm, that serves as a basis for the offense of intimidation." State v. Foster, Cuyahoga App. No. 90109, 2008-Ohio-2933, ¶ 24. In Foster, the court of appeals determined that a conviction under division (B) of R.C. 2921.04 was supported by evidence that the defendant told the victim: "I will get you. I am going to get you back for this." Id. at ¶ 23. See, also, State v.Butcher, Ashtabula App. No. 2002-A-0059, 2003-Ohio-5537, ¶ 19 (concluding that a statement made to a victim to *Page 8 
drop criminal charges "or else" was sufficient to support a felony witness intimidation charge).
 {¶ 31} Leonard testified that appellant told her if she wanted "everything to be fine," she needed to tell the authorities that he did not kidnap her. She also testified that appellant stated that even if he could not "get to" her while she was in Maine, he could "get to" Lakes. According to Leonard, appellant tended to follow through with his threats. Construing this evidence in favor of the state, as we are required to do, we conclude that Leonard's testimony was sufficient to support appellant's felony conviction for intimidation. Haney, Clermont App. No. CA2005-07-068, 2006-Ohio-3899 at ¶ 14. Appellant's second assignment of error is therefore overruled.
 {¶ 32} Judgment affirmed.
WALSH and RINGLAND, JJ., concur.
[1] We note that appellant's drug possession charge was dismissed prior to trial. *Page 1